United States District Court
Southern District of Texas
**ENTERED**
September 11, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SARAY M. DE L.,[1] Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:26-cv-838 |
| | § | |
| WARDEN, EL VALLE DETENTION CENTER, *et al.*, Respondents. | § | |

**REPORT AND RECOMMENDATION TO DISMISS PETITIONER'S HABEAS PETITION**

Before the Court is Petitioner Saray M. de L.'s "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (Dkt. No. 1) ("Petition"), Respondents' "Motion for Summary Judgment and Response to Petition for Writ of Habeas Corpus" (Dkt. No. 6), and Petitioner's "Advisory Regarding Final Order of Removal and Intent to Remove" (Dkt. No. 18).

Because Petitioner's claim of excessive detention is premature, it is recommended that the Court (1) **DENY** the Petition (Dkt. No. 1), (2) **MOOT** the Motion for Summary Judgment (Dkt. No. 6), and (3) **DIRECT** the Clerk of Court to close the case.

## I. Background and Procedural History

Petitioner is a citizen of El Salvador currently held at the El Valle Detention Facility in Willacy County, Texas. Dkt. No. 1 at 2. On March 15, 2017, an Immigration Judge ordered Petitioner removed but granted Petitioner withholding removal to El Salvador. *Id*; Dkt. No. 6 at 2. Petitioner and the Department of Homeland Security waived the opportunity to appeal this decision. Dkt. No. 6 at 2. Petitioner was taken into immigration custody on July 9, 2026. Dkt. No. 2 at 6.[2] Petitioner challenges her detention by immigration authorities as a violation

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the petitioner only by first name and last initial.

[2] Respondents state Petitioner was arrested and taken into custody on July 9, 2026, Dkt. No. 6 at 2, and Petitioner states that she was arrested by Respondent on July 8, 2026, Dkt. No. 1 at 2.

of substantive and procedural due process, a violation of three provisions of the Administrative Procedure Act, ultra vires action, and as a violation of the Accardi Doctrine. Dkt. No. 1 at 13-20.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A court has "an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006), and, if it "determines…that it lacks subject-matter jurisdiction," it "must dismiss the action," Fed. R. Civ. P. 12(h)(3). One "essential component[]" of "federal subject-matter jurisdiction" is "ripeness." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). For a court to exercise jurisdiction, then, the case "must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002).

## III. Discussion

Once a removal order becomes final,[3] 8 U.S.C. § 1231 ("§ 1231") authorizes detention of the alien to effectuate removal under two provisions. In the first 90 days (otherwise known as the "removal period"), 8 U.S.C. § 1231(a)(1), the "Attorney General shall detain the alien" under 8 U.S.C. § 1231(a)(2). Once the removal period ends, the source of authorization shifts to § 1231(a)(6), which states that the alien "may be detained" by the Attorney General "beyond the removal period." 8 U.S.C. § 1231(a)(6). To ensure § 1231(a)(6) would not lead to constitutionally excessive detention, the Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) construed it to have an implied limit: authorization of detention under § 1231(a)(6) would run out when continued detention "exceeds a period reasonably necessary to secure removal" and removal "is no longer reasonably foreseeable." *Zadvydas*, 533 U.S. at 699. The Court, however, also understood that a reasonableness standard,

[3] A removal order becomes "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i) upon "(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

standing alone, would risk too much judicial interference with the Executive's "primacy in foreign policy matters." *Id.* at 701. The Court thus found it "practically necessary" to "limit" its new standard by recognizing a "presumptively reasonable period of detention" of "six months." *Id.*

Pieced together, the *Zadvydas* framework slots claims challenging post-final-removal-order detention into two phases:[4] 1) a six-month period where the statute constitutionally authorizes detention (and *Zadvydas* claims are thus not viable); and 2) a period "after that," in which the alien can seek conditional release under *Zadvydas* "if he can demonstrate there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 378 (quoting *Zadvydas*, 533 U.S. at 701). If a petitioner seeks release from detention in the first phase—the presumptively reasonable period—his or her claim is not yet ripe.[5] *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011); *see also Kakhidze v. Venegas*, No. 1:25-cv-00136, 2025 WL 2412854, at *3

[4] Some district courts in this circuit remain skeptical of this tidy two-phase scheme. *See, e.g., Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703 (S.D. Tex. 2020); *Villanueva v. Tate*, 801 F. Supp. 3d 689 (S.D. Tex. 2025). They suggest that *Zadvydas* prescribes a (rebuttable) presumption of reasonableness during those first six months—and does not, in effect, proscribe claims brought before that period elapses. *See, e.g.*, *Villaneuva*, 801 F. Supp. at 703. Admittedly, *Zadvydas* is not precise about what its presumption means for the first six months. *Zadvydas*, 533 U.S. at 701. But the formulation offered by the Court in and after that case only contemplates petitioners proving their detention is unreasonable after the six-month period ends. *Id.* at 701 ("*After* this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing") (emphasis added); *Clark*, 543 U.S. at 378 ("*after* that [presumptive period], the alien is eligible for conditional release if he can demonstrate…") (emphasis added); *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (same). The Fifth Circuit, though not settling the issue, has issued strong signals of its own. It has described the timing of *Zadvydas* claims in the same terms, *see Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 757 (5th Cir. 2008), approved of district courts dismissing *Zadvydas* claims as "premature" when made during the presumptive period, *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (per curiam); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (per curiam), and itself found a *Zadvydas* claim to be "premature" for the same reason, *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

[5] Whether a claim of unreasonably prolonged detention is offered in statutory or constitutional terms, the result is the same: it is "presumptively *constitutional* for an alien to be detained for six months after a final order of removal." *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (emphasis added), and a constitutional challenge to prolonged detention fails unless it meets the standard set by *Zadvydas*, *see Andrade v. Gonzales*, 459 F. 3d 538, 543 (5th Cir. 2006).

(S.D. Tex. July 30, 2025), *report and recommendation adopted*, 2025 WL 2411229 (S.D. Tex. Aug. 20, 2025).

Petitioner's order of removal became administratively final in 2017 when both parties waived the opportunity to appeal the IJ's order. *See* 8 U.S.C. § 1101(a)(47)(B). The Government states that Petitioner "was taken into immigration custody for the first time with a final order of removal on July 9, 2026." Dkt. No. 6 at 2. Considering this, Petitioner has been detained for approximately 50 days. Even if the 90-day removal period afforded by statute ran the clock in 2017, Petitioner has still been held for less than the 180-day presumptive period set in *Zadvydas*. Because Petitioner's detention period has not yet exceeded the 180-day presumptive period, the Petition's claims are not yet ripe, and the Court therefore lacks subject matter jurisdiction to hear this case.

**IV. Petitioner's Re-Detention Claims**

Petitioner presents claims under the Administrative Procedure Act and the Accardi Doctrine regarding her re-detention. Dkt. No. 1 at 14-20. Although Petitioner initially based her claims upon the revocation of an Order of Supervision, the Government's Response states and argues that "Petitioner was never previously released from immigration custody on an order of supervision, so there is no OSUP to revoke." Dkt. No. 6 at 3. Additionally, the Government states that "she was released on an Order of Recognizance." Dkt. No. 6 at 2. In Petitioner's response, she asserts that her re-detention claim still stands even though Petitioner was not released on an Order of Supervision. Dkt. No. 7 at 3-5. Petitioner argues that "[t]he label Respondents now assign to an earlier release document does not resolve whether Petitioner remained released under supervision after the removal period or whether ICE lawfully could re-detain her without the required determination." Dkt. No. 7 at 4.

However, the record before the Court states that Petitioner was released on an order of recognizance, not an order of supervision. Given these facts, the Court finds that Petitioner's claims based on her re-detention fail for the following reasons. Under 8 U.S.C. § 1226, the Attorney General is vested with the discretion to release an alien on bond, 8 U.S.C. § 1226(a), and to "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien. 8 U.S.C. § 1226(b). Because that

same section strips courts of review of the "Attorney General's discretionary judgment regarding the application of this section," this court's jurisdiction effectively depends on whether a failure to adhere to typical bond procedures is within this unreviewable zone of "discretionary judgment regarding the application of this section." 8 U.S.C. § 1226(e); see also 8 U.S.C. § 1252(a)(5) (specifying bars on judicial review also bar habeas review). The Fifth Circuit has provided a strong signal to read this expansively: the discretionary judgment made unreviewable by § 1226(e), in that court's account, includes the "manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints." *Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000). Because the Court understands Respondents' bond revocation procedures—and any alleged abdication thereof—to fall within this very wide zone of unreviewable discretion, it must also conclude that it does not have the jurisdiction to review this case.

## V. Recommendation

It is recommended that the Court (1) **DENY** the Petition (Dkt. No. 1),[6] (2) **DENY as MOOT**[7] the Motion for Summary Judgment (Dkt. No. 17), and (3) **DIRECT** the Clerk of Court to close the case.

## VI. Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to the instant case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.

---

[6] Because dismissal for lack of subject matter jurisdiction is without prejudice, Petitioner may file another habeas petition once her claims are ripe. *See Ruiz v. Brennan*, 851 F. 3d 464, 472 (5th Cir. 2017).

[7] *Patel v. United States*, 398 Fed. Appx. 22, 24 n.1 (5th Cir. 2010) ("A grant of summary judgment is a resolution of a case on the merits, which cannot be accomplished by a court lacking subject matter jurisdiction.")

1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on September 11, 2026

Karen Betancourt

Karen Betancourt
United States Magistrate Judge